Chief Justice Marshall
delivered the opinion of the Court.
Without going into any detail of the facts of this vexatious and complicated case, we are satisfied from a laborious investigation of the record, that the arrangement between Lewis and Wm. M. Ford, by which the , . . . , . , r . latter got the possession and the title oí a large portion of Lewis’ property, consisting of one half of the ferry property, and also of the negroes and personalty in the bill mentioned, was entered into and carried out mainly ior the purpose oi protecting the property irorn the creditors of Lewis. This being the fact, no obligation to re-convev, growing out of the transaction, or forming part of it, can either be itself enforced, or form the consideration of an enforceable promise, or covenant written, or parol; and as Lewis wholly fails to make out the statements of his bill ,with regard to the object ox-motive for placing his property in Fox-d’s hands, and as to the written articles of partnership, of which he exhibits an alleged rough di’aft. And, as moreover', the bond for a re-conveyance of the ferry property, as spoken of by some of his witnesses, if there ever was such a bond, is not stated to have been founded on any new considex-ation, and whether it was a separate bond oxdefeasance, or was a covenant contained in the alleged articles of partnership, or in the rough draft thereof, must be taken to have rested solely, or at least substantially upon the fix-st fraudulent arrangement, if it was not a part of it, a Chancellor could not, without a violation of the principles of law and policy, which declare such an arrangement fraudulent and void, as to creditors, &c., but valid as between the parties, enforce such bond or covenant, and thus aid in carrying out *128 and effectuating the illegal arrangement. If Ford had re-conveyed the property, the deed passing the legal title must have been respected. But a mere executory contract, founded upon no consideration, or upon one that is illegal, cannot be enforced in equity. And as the fraudulent arrangement though it implies a secret trust as a part of the fraud, repels the implication of a resulting trust, (arising either from a conveyance without consideration, or from the fact that Lewis paid for the ferry, áse., and the bond for title was, by his direction or consent, made to Ford,) there is no ground upon which Lewis can claim, in a Court of Equity, either a re-conveyance, or an account of profits.
The Chancellor will not enforce any obligation written or parol to re-convey property conveyed fraudulently . to avoid', the payment of debts.
J. Sf W. L. Harlan and E. M. Ewing for plaintiffs; Cates, B. fy A. Monroe and Robertson for defendant-
This conclusion disposes of the whole case; and we only add that it appears that Ford and his executor have paid large sums of money to and for Lewis, approximating to the value of the property when received; that, the negroes and personalty were fully paid for, leaving an excess of advances, which cuts off the account for hire, and that little, if any thing, could properly be charged against Ford’s executors for profits of the ferry property while under his management. And from the nature of the relation and confidence between the original parties, it is impossible to arrive at the actual state of the accounts between them; and as, moreover, there is much conflict in the testimony and circumstances referred to, there would seem to be more danger of doing injustice between the parties by attempting a settlement at this late period, than there is-in adhering to the principle of law and policy under which the Court will leave the parties to a fraudulent and illegal transaction, in the condition in which they have placed themselves.
Wherefore the decree is reversed, and the cause remanded with directions to dismiss the bill.