FANNY B. DEWHURST ET AL., APPELLANTS, vs. WILLIAM WRIGHT, APPELLEE.

1. Where one without title has conveyed land in his own right with covenants warranting the title and afterwards the title comes to him in the capacity of a trustee for a different person, the newly acquired title does not enure to the former grantor of such covenantor, nor pass to him. The estoppel arises only where the covenantor takes the new title in the same right in which he had previously conveyed it.

2. Where a person makes a lawful purchase of land for himself with his own money, taking the title in the name of another person, a trust results in favor of the purchaser, and the person in whose name the title is taken becomes a trustee of the title in favor of the purchaser; but such title doet not either enure to the benefit of or pass to a third person, to whom the person in whose name the title was taken, had previously conveyed the land by warranty deed.

3. A court of equity will not declare or enforce a resulting trust contrary to the policy of the law as defined in a public statute, but will leave suitors, asking its aid, where it finds them, if it appears that they are seeking to evade the policy of the law.

4. The provisions of the second section of the act of Congress of June 15th, 1880, entitled "an act relating to public lands of the United States," that "persons who have heretofore under any of the homestead laws entered lands properly subject to such entry, or persons to whom the right of those having so entered for homesteads may have been attempted to be transferred by *bona fide* instrument in writing," may make cash entry of the land, do not include a person to whom such right of the entryman has been transferred subsequent to such statute, and where such a transferee has entered the land with his own money, and for his own benefit, but in the name of the entryman, it not appearing that he dealt with the government officers as such transferee, a court of equity will not declare or

enforce a resulting trust in favor of such transferee or his grantee, against a third person in possession of the land, and to whom the original entryman had previously to such transfer, but subsequent to the statute, executed a conveyance of the land.

Appeal from the Circuit Court for Lake county.

### STATEMENT.

1. The facts shown, and allegations and prayer made, by the bill are as follows : On June 1st, 1870, the appellee's co-defendant, Polydore Dean, entered the land in question, 160 acres, now in Lake county, but then in Sumter, as a homestead under the laws of the United States, in the Tallahassee Land Office, the entry being Number 4667 of the series of June, 1870. In December, 1878, final proof was made under section 2291 of the Revised Statutes, and the final certificate, No. 4261, Gainesville office, was issued on December 6th, 1883. Intervening the final proof and the issues of the final certificate Dean conveyed the land to Wright on August 31st, 1883, by deed with full covenant of general warranty. In August, 1884, Dean was cited to appear at the Gainesville Land Office on the 25th day of the following November, to answer a charge of fraud in the proof of his continuous residence on the land. Dewhurst, the co-appellant, appeared, as attorney for Dean, in compliance with the citation, and found that the United States officials were in possession of proof that Dean had not complied with the

## JANUARY TERM, 1892. 225.

Fanny B. Dewhurst, et al. v. William Wright.—Statement of Case..

law as to residence, he having lived on the land for not longer than two years, although he had sworn in his affidavit of August 17th, 1878, in making final proof, that he had continuously resided thereon for six years. Dewhurst prepared for Dean an appeal to the Commissioner of the General Land Office praying that Dean be allowed to make new proof of his homestead entry and obtain title to the land embraced in the same. A letter from the Receiver of the Land Office at Gainesville, dated December 6th, 1884, addressed to Dewhurst, "attorney for Polydore Dean," St. Augustine, Fla., states that the petition had been forwarded that day to the General Land Office for consideration. This petition was refused by the Commissioner, and the land officers at Gainesville were notified of such refusal by a letter of December 29th, 1884, and they on January 13th, 1885, notified Dewhurst, as attorney for Dean, of such refusal, and with a view to the cancellation of the entry, cited Dean to appear on the 23rd day of February, and furnish proof concerning the alleged abandonment of his homestead entry and fraudulent proof.

2. On December 2nd, 1884, Dean conveyed the land in question to Dewhurst, the consideration stated in the deed being $200, and the deed being recorded in the public records of Sumter county on the 8th day of the same month. This deed is a formal conveyance of the land and of all the estate, right, title and interest, "both vested and which may hereafter accrue, prop-

erty, possession, claim and demand whatsoever, as well in law as in equity," of the said Dean, and has full covenants of seisin, and of power to sell and convey, and of general warranty. On the last named day Dewhurst conveyed the land to one Bradley, of Pittsburg, Pennsylvania, the consideration named being $960, and it having a covenant of general warranty.

3. The bill also alleges that Dewhurst, finding that Dean had no defense to the charges of fraud, and that the proofs of the same were unmistakable, and that his claim and interest was forfeited, and his homestead entry about to be cancelled, obtained from the Commissioner of the General Land Office an admission that Dean had still the right to make a cash purchase of the land embraced in such entry; and as an evidence of such right the bill refers to a letter of September 26th, 1884, to Dewhurst from the acting Commissioner, Smith, in reply to one from Dewhurst on the 16th of the same month. The acting Commissioner replying to Dewhurst's inquiry if Dean could purchase the land under the second section of the act of June 15th, 1880, says there is nothing in the proceedings thus far to defeat Dean's right to purchase under that act. The bill states that Dewhurst so advised Dean and urged him to make such purchase; that Dean was totally indifferent in the matter and declined to purchase the land, urging his total inability to provide any, even a small sum, of the money necessary; that finding that Dean could not obtain the means to purchase the land, and that otherwise they would be totally lost, and the United States would continue to retain the title against

Dean, he, Dewhurst, for a valuable consideration, purchased from Dean the equitable title to the land, no other claim or title then remaining in Dean to said lands, except a right to make cash purchase thereof under the above act of June 15th, 1880, and that he received from Dean the above deed of December 2nd, 1884; that Dean had not at the date of such conveyance, nor at any other time, disclosed that he had executed any other and former deed, but had at all times declared that he had a full and clear title, subject only to the title of the United States; that Dean did declare to Dewhurst that by and with his consent one William Wright was "cropping" on the land, but was there without any claim of right thereto, he having entered thereon by permission of one Fred Williams, who had entered on said lands by consent of Dean, and to whom Dean had given permission to erect a house on the land, in which house Wright was then residing; that relying on the statement made by Dean, that he had full right to sell and convey his equitable title, the legal title being still in the United States, he, Dewhurst, did with his own moneys purchase said legal title as hereinafter set forth, and did "for a valuable consideration" receive from Dean a conveyance to him of the equitable title of said Dean in and to said land, with a release of all right of dower by his wife, first having been informed over the hand and seal of the clerk of Sumter county that there was no conveyance of record in his office of or concerning such land.

4. That Dewhurst did on January 23rd, 1885, with his own moneys make payment to the United States

for the legal title of said land, said payment having been made to the Receiver of the United States Land Office at Gainesville, Florida, as evidenced by the complainant's check of that date on Florida Savings Bank, drawn in favor of such Receiver for $200; that the Receiver transmitted to Dewhurst in return for such check his duplicate receipt, which on April 20th, 1885, was transmitted to the General Land Office, and thereafter in due course of time and according to law the patent for said land was duly transmitted to Dewhurst, of which a copy duly certified will be presented on the trial of the cause.

5. That Dean being the owner of the legal title to such land by reason of the purchase thereof by Dewhurst from the United States on January 23rd, 1885, having been made in the name of Dean, although for the use of Dewhurst, did for further assurance, execute to Dewhurst February 14th, 1885, his deed of conveyance with full covenant of seisin and general warranty for said land.

6. That on the 10th day of June, 1885, Bradley and wife conveyed the land to Mrs. Dewhurst with covenant of warranty against all claims of all persons whomsoever.

7. That in the summer of 1886 Dewhurst learned that Wright had received from Dean a deed of conveyance " to the land owned by your oratrix, and which Dean had attempted to convey to said Wright under and by virtue of his fraudulent claim of a homestead right and

title, which would have enured to said Dean under and by virtue of section 2291 of the Revised Statutes of the United States, had he complied with the provisions of said law, but Dean having failed to so comply, the said homestead right never enured to said Dean for want of compliance with said law, as admitted by Dean in his sworn petition for leave to make new proof in support of said homestead claim, and no right or title to said lands existed in said defendant Dean at the date of his pretended conveyance to Wright on the 31st day of August, 1883.

8. That no equitable title ever existed in Dean, because the sole and only title ever derived from the United States was derived by virtue of the cash entry and payment made January 23rd, 1885, "with the moneys of this complainant, Dewhurst, paid by him upon the strength of the covenants of said defendant Dean ;" that he was in possession of the land and had full right to sell and convey the same, and because Dean had conveyed to him, Dewhurst, the land with full covenants of seisin and warranty upon December 2d, 1884.

9. That Wright's deed was not recorded till June 23d, 1885, or more than six months after the record of the deed from Dean to Dewhurst, or from Dewhurst to Bradley; that the consideration named in the deed is only twenty dollars; that even if Dean on August 31st, 1883, had had any right or title to said lands, which

complainants deny, complainants are not affected in their right and title to own and possess said lands, as the pretended conveyance to Wright is void as to subsequent purchasers for value without notice.

10. That Dean did not after the date of his pretended conveyance to Wright acquire a title to said land which would by virtue of his covenants in the pretended conveyance of August 31st, 1883, enure to the benefit of Wright, because he never acquired any other than a bare legal title as trustee for the complainant, Dewhurst, who paid all the purchase money by which was acquired the title to said land; that by such payment Dewhurst alone became *cestui que trust* as to the legal title whether such legal title remained in Dean, or by force and construction of law and by virtue of the covenants in the deed of August 31st, 1883, the legal title to said land passed to the defendant, Wright; and complainants pray the court to decide what is in law the effect of said deed of August 31st, 1883, if any it has, and if it shall decide that in law it is effective to pass the after-acquired title of Dean, to declare Wright a trustee holding the legal title for the benefit of Mrs. Dewhurst, as the grantee of Bradley, who was the grantee of Dewhurst.

11. Complainants allege, in effect, that they took without notice of said deed; and Wright went into possession as a tenant of Dean's tenant, one Williams, and at the time when Dean occupied and claimed the

land as his homestead; that Wright now holds possession of said land, but only by virtue of his original entry under and by leave of Dean, without any claim of ownership; that complainants are informed that Wright is now claiming the whole or some part of said lands adversely to Mrs. Dewhurst, and that he now claims that he held such lands adversely to Dean at the date of Dean's conveyance to Mrs. Dewhurst; but complainants believe that the possession of Wright, beginning by entry while the land was still held and claimed by Dean by virtue of his homestead entry, and such entry being by permission of one under Dean, must be deemed to be under and in subordination to the title of Dean up to such time as Wright took action to establish by some act of notoriety the fact that he claimed to hold said lands adversely to the title of Dean.

12. That recording the deed was the first notice given by Wright that he held adversely to Dean; that Wright has never returned the land for taxes. That the title to the land may be decreed to be in Mrs. Dewhurst; that the deed to Wright be cancelled, and to be void as against her, "her husband and assigns;" that Wright be ordered to execute and deliver to her a deed of conveyance of the premises, and for general relief.

Wright demurred to the bill as not showing a case entitling complainants to discovery or relief, and as stating a case determinable at law, and the chancellor

dismissed the bill on hearing the demurrer, from which order complainants have appealed.

The other facts in the case are stated in the opinion of the court.

*W. W. Dewhurst* for Appellants.

*J. B. Gaines* for Appellee.

(Judge Young, of the Fourth Circuit, sat in the place of Mr. Justice Mabry, who was disqualified.)

RANEY, C. J. :

The purchase of land, represented by the bill, was made under the second section of the act of Congress, approved June 15th, 1880, entitled : An act relating to the public lands of the United States. This section provides : That persons who have heretofore under any of the homestead laws entered lands properly subject to such entry, or persons to whom the right of those having so entered for homesteads may have been attempted to be transferred by *bona fide* instrument in writing, may entitle themselves to said lands by paying the government price therefor, and in no case less than one dollar and twenty-five cents per acre, and the amount heretofore paid the government upon said lands shall be taken as a part of said price : *Provided,* that this shall in no wise interfere with the rights or claims of others who may have subsequently entered

such lands under the homestead laws.    Page 558 of Vol. 1, Supplement to Revised Statutes of the United States.

The real purpose of the bill is to have Wright declared a trustee of the title of the land, in favor of Mrs. Dewhurst, and to require him to convey the same to her by proper deed.

Dean had, prior to the approval of the above act of Congress, made an entry of the land, and had received his first certificate, but not a patent.    Subsequent to the act proceedings were instituted to cancel the entry for fraudulent proof as to residence on the land.    He was clearly within the provisions of the above act of Congress, but the bill informs us not only that he was indifferent to purchasing under its provisions, and could not provide the money to do so, but that he in fact declined to purchase, though urged to do so by Dewhurst, and that Dewhurst with his own money purchased the title of the United States and took the title in the name of Dean.    The bill is not framed upon the theory that Dewhurst advanced the money for Dean or made the purchase for him, nor that at the time he paid the money he was acting for Dean in any representative capacity, nor under any agreement between him and Dean by which Dean would become the trustee of the title under an express trust in Dewhurst's favor.    The theory of the bill, on the contrary, is that Dewhurst purchased the land for himself, and

paid for it with his own money, as purchaser, and took the title in Dean's name, and that thereupon a trust resulted in his favor, and that by virtue of the conveyances from Dean to him, and from Dewhurst to Bradley, and from Bradley to Mrs. Dewhurst, the last named party has become invested with the right to have a trust declared against Wright, to whom Dean had conveyed before conveying to Dewhurst, and to a conveyance from Wright.

Assuming that Dewhurst could have purchased lawfully the land for himself, and did so with his own money, and took the title in the name of Dean, the result would have been that upon such purchase being made, Dean would have held the land in trust for Dewhurst, or Dewhurst's grantees, such trust being what is known as a resulting trust; Perry on Trusts, sec. 133, and note 4; but the title so vested in Dean in trust would not have enured to the benefit of Wright under his prior warranty deed from Dean, nor have passed to Wright from Dean. Where one without title has conveyed land in his own right with covenants warranting the title, and afterwards the title comes to him in the capacity of a trustee for a different person, such newly acquired title does not enure to the former grantee of the covenantor. The estoppel arises only where the covenantor takes the new title in the same right in which he had previously conveyed it. 3 Washburn on Real Property, m. p. 475, sec. 37; Burchard vs. Hubbard, 11 Ohio, 316; Kelley vs. Jenness, 50 Me., 445;

Jackson vs. Mills, 13 Johns., 463 ; Sinclair vs. Jackson, 8 Cowen, 543, 587 ; Jackson vs. Hoffman, 9 Cowen, 271 ; Marsh vs. Rice, 1 N. H., 167 ; Remlit vs. Otis, 2 N. H., 167.   We are satisfied that no benefit would have enured to Wright from the patent to Dean if the effect of such patent had been to vest the title as between Dean and Dewhurst, or Dean and Dewhurst's grantee, in Dean, in trust for Dewhurst or such grantee, and that it would not, either of itself, nor through the aid of the former deed from Dean to Wright have constituted Wright a trustee for Dewhurst, or for Dewhurst's grantee. It was Dean, not Wright, whom Dewhurst, in the eyes of the law, intended to make a trustee, and the law usually constitutes one under such circumstances. Wright's position is not only wholly disconnected from the transaction, but entirely hostile to it.

The trouble with complainant's case is, that they are asking a court of equity to aid them in something which is contrary to the policy of the law: This a court of equity will not do, but judging those who pray at its hands relief which the courts of law cannot afford, by the case they make for themselves, it will leave them where they are if it appears they are seeking to evade the policy of the law as defined in a public statute. 1 Perry on Trusts, sec. 131 ; Proseus vs. McIntyre, 5 Barb., 425 ; Baldwin vs. Campfield, 8 N. J. (Eq.), 891 ; Cutler vs. Tuttle, 19 N. J, (Eq.), 549 ; Ford's Executors vs. Lewis, 10 B. Mon., 127 ;

Camden vs. Anderson, 5 T. R., 709; Yallop, *Ex parte*, 5 Vesey, Jr., 60; Houghton, Gribble, *Ex parte*, 17 Vesey, Jr., 251; Graves vs. Graves, 3 Y. & J., 163; Childers vs. Childers, 1 De G. & J., 481; Atkins vs. Kron, 5 Iredell (Eq.), 207; Leggett vs. Du Bois, 5 Paige, 114; Hubbard vs. Goodwin, 3 Leigh, 532; Mc-Caw vs. Galbraith, 7 Rich., (Law.), 74; Anstice vs. Brown, 6 Paige, 448.

The purpose of the act of Congress, as set out above, was the relief of persons who had previously entered for homesteads lands under any of the homestead laws of the United States, and also the relief of the persons to whom the right of those having so entered lands for homesteads had been previously attempted to be transferred by *bona fide* instrument in writing. The policy of the act was to permit these two classes of persons to purchase for cash, or make a cash entry of the lands upon the terms stated in the act, and thus save them from the loss consequent upon failure to comply with the ordinary statutory requirements as to residence, or occupation, and improvement in case of homestead entries. Neither of these classes include, nor does the policy of the act embrace, a person to whom the person making the entry may have made a transfer, or a *bona fide* attempt to transfer, subsequent to the act. The act does not permit a person who belongs to neither of the two favored classes to avail himself of the benefits offered them, by doing for himself and with his own money, but in their name and upon their application,

and the proof of identity which the provisions of the act palpably render indispensable, that which he could not do if acting avowedly and openly for himself ; nor will a court of equity, even though a patent in the name of one entitled to it under the provisions of the above statute had been secured by a person not belonging to either of the favored classes, relieve such person of unanticipated obstacles to the beneficial realization of that which the statute never intended he should acquire under its provisions.

If the bill showed that Dewhurst had applied to the government in his own name as the transferee of Dean under Dean's deed of December 2d, 1884, to him, for the benefit of the act of Congress, and that the land officer had decided that he was by virtue of such deed entitled to the benefit of the act, and had actually sold to him, and made the conveyance in the name of Dean, a different case would be before us, and we do not say what our conclusion would be.   As it is, the bill is not sufficient in its statement of the details of the procedure to justify a conclusion that Dewhurst has operated in this way and in his own name, and not under the name of Dean.   It cannot be inferred from the statements of the bill that the government officers have dealt with Dewhurst as the tranferee of Dean; the only inference legitimate, in view of the law, is that Dewhurst after Dean's refusal to purchase, did so really for himself as between him and Dean, but act-

ually in Dean's name. This the law did not permit him to do, and a court of equity will not sanction.

We of course do not mean to intimate any judgment as to the validity of the patent. No such question is before us. However valid it may be as between Dean and the government, and we do not say it is not entirely so, we only say that a court of equity will not aid complainants upon the case made by the bill, but will, as to the case made by this bill, leave all the parties in the position they occupy at law.

The order appealed from is affirmed.