## PENSACOLA GAS COMPANY, APPELLANT, VS. PROVISIONAL MUNICIPALITY OF PENSACOLA, APPELLEE.

1. The right to supply a city and its inhabitants with gas by the use of pipes laid in the public streets is a franchise, and the service performed as a consideration for the grant of such a franchise is of a public nature. Where the power to grant such a franchise is conferred upon a municipal corporation it belongs to those held in trust for the public, and such grants from the city should be strictly construed as against the grantees.

2. The contract as it exists between the municipality of Pensacola and the Pensacola Gas Company, and contained in an ordinance passed by the city of Pensacola in November, 1882, an agreement entered into between the provisional municipality and the gas company in August, 1885, and an ordinance passed by the provisional municipality in May, 1891, all of which are set out in the record in this cause, construed to impose upon the gas company the duty of supplying the municipality with gas for public purposes as the public necessities require, and also to furnish the necessary pipes for conducting the gas to be supplied, and to erect the necessary street lamps with the burners specified, and light, clean and extinguish them for the period mentioned in the said contract, upon a compliance with the terms thereof on the part of the municipality.

3. The enforcement of the specific execution of a contract in a court of equity is not a matter of strict legal right, but rests in the sound discretion of the court.

4. It is incumbent upon him who seeks in a court of equity the specific enforcement of a contract to show that he has done, or offered to do, or is then ready and willing to do, all the essential and material acts required of him by the agreement at the time of commencing his suit, and also that he is ready and willing to do all such acts as shall be required of him in the specific execution of the contract according to its terms.

Appeal from the Circuit Court for Escambia county.

STATEMENT.

The Provisional Municipality of Pensacola filed a bill in the Circuit Court of Escambia county against the Pensacola Gas Company to compel the specific performance of an alleged duty on the part of the gas company, growing out of contract, to erect public gas lamps at such public places in the municipality as it should require.

The city of Pensacola, predecessor of the provisional municipality, by ordinance passed November 13th, 1882, granted to Francis Walsh, his associates, successors and assigns as individuals, or as a body corporate, under the name of the Pensacola Gas Company, the exclusive privilege, for the term of 30 years from the passage of the ordinance, of erecting gas works in said city, and to use the streets, alley-ways and public grounds thereof for the purpose of putting down therein pipes to be used in conveying gas for the use of said city and its inhabitants. In the second section of this ordinance it was provided that in consideration of the privileges granted, Walsh and his associates as individuals, or as a body corporate, should commence the construction of said gas works within four months from the date of the ordinance, and complete the same within eight months from the date of commencement, together with the laying down of such pipe as should be necessary for use in the business and inhabited parts of the city. The third section enacts that as a fair consideration for the privileges granted, Walsh and his associates shall be required to furnish the citizens with gas of good quality at a rate not to exceed three dollars per thousand cubic feet, and to the city for public uses as required at a rate not to exceed two dollars and seventy-five cents per thousand cubic feet.

Provision is made against a temporary failure to per-
form conditions of ordinance on account of accident,
or other cases not within human control, but it is not
necessary to refer to it. The fifth section ordained
that all excavations of streets, alley-ways and other
grounds should be made with the least possible incon-
venience to the public, and that the said streets, alley-
ways and grounds should be left in as good condition
as before putting down the pipe.

In August, 1885, the provisional municipality of
Pensacola and the Pensacola Gas Company entered
into an agreement as follows, *viz:* "For and in consid-
eration of the covenant and agreements hereinafter
mentioned, the said Pensacola Gas Company agrees to
furnish the said city of Pensacola with a number of
street lamps not to exceed 137, the said gas company
to light, extinguish, clean and keep in good repair said
lamps without any charge to the said city. The said
lamps to be supplied with gas lights as follows: 37
lamps to be provided with a 14-candle burner, to fur-
nish a 14-candle light under the average pressure car-
ried on the mains; 100 of said lamps to be provided
with a 10-candle burner with like pressure. The said
lamps to be lighted and extinguished according to a
schedule made to follow the moon as follows." The
times for lighting and extinguishing the lamps are
mentioned, and the contract continues as follows, *viz:*
"For which light so furnished the said city is to pay
said gas company for each and every light the sum of
$1.66⅔ per month, which said sum shall be due and
payable at the end of each month respectively." It
was also provided in the contract that the city should
have the privilege of having the lamps lighted by the
gas company at any time not included in the schedule
mentioned, and for such extra time the city was to pay

the gas company at the end of each month. This contract by its terms was to take effect and be in force from the 19th day of June, 1885, to the 19th day of June, 1886.

In May, 1891, the provisional municipality passed the following ordinance, *viz*:

### AN ORDINANCE

To effect a settlement of the claims of the Pensacola Gas Company against the city of Pensacola, to establish the price of gas, and to provide for public gas lamps for the period of ten years from January 1st, 1891, and to extend the term of the rights and privileges granted to the Pensacola Gas Company.

Whereas the city of Pensacola is indebted to the Pensacola Gas Company for certain judgments at their face value of $4,414.11, making, with interest to January 1st, 1891, the sum of $6,200.-50, and desires to obtain a settlement thereof, and also desires to contract with said Pensacola Gas Company for the lighting of public gas street lamps for a period of ten years from January 1st, 1891, at a less rate than is now paid for street lamps;

And whereas the Pensacola Gas Company, a corporation organized under the laws of the State of Florida, and invested with the right to furnish gas to the city of Pensacola until November 13th, 1912, is ready and willing to make the settlement in satisfaction of its claim against the said city of Pensacola as recited above, and also to reduce the price of said public gas street lamps in accordance with the terms of this ordinance, and to agree to furnish gas at the price herein named for a period of ten years from January 1st, 1891, provided the rights

and privileges vested in it shall be extended for a period of fifty years from the first day of January, 1891:

Section 1. Be it ordained by the Mayor and City Council of the City of Pensacola: That said Pensacola Gas Company may charge a net price for gas to consumers (except for public gas street lamps) of not exceeding at the rate or equivalent of eight-tenths of one cent per hour for a fourteen-candle power light during a period of ten years from January 1st, 1891, and shall not during said period charge at a higher rate for gas except as provided in Section 4, but shall charge this rate on gas not below fourteen-candle power, the quality to be determined by the tester in clerk's office; provided, said gas company will relinquish judgment and discharge said claim for $6,200.50 against said city of Pensacola, and will on accepting this ordinance cause the said judgment to be marked satisfied of record; and provided further, that said gas company shall not during said period of ten years charge said city of Pensacola a higher price than $18.00 per annum for each public gas street lamp of the same efficiency as the present service, including furnishing gas to, lighting, cleaning, extinguishing and repairing. Said lamps to be lighted and kept lit, gas company to be charged *pro rata* for time the lamps are not lighted, and service to be rendered upon the same terms and conditions in all other respects as set out in a certain contract made between said city and said gas company dated the 15th day of August, 1885, and the lamps to be furnished with burners of the sizes named in said contract. Said city shall pay therefor the price herein named, and shall not during said period of ten years contract with any other person or corporation for gas for street lamps. Payments for street lamp service shall be made to the

JANUARY TERM, 1894. 327

Pensacola Gas Co. v. Pro. Munic. of Pensacola.—Statement of Case.

company by the city monthly. Said lamps to number not less than 160.

Section 2. From and after November 13th, 1912, and until January 1st, 1941, the Pensacola Gas Company shall have and enjoy all the rights and privileges theretofore granted to it by the city of Pensacola, excepting: that from and after November 13th, 1912, the rights and privileges of said company shall no longer be exclusive, but such rights and privileges shall be subject to the terms and provisions of all regulating ordinances of the city of Pensacola, to which said company is now subject.

Section 3. Be it further ordained, That within 30 days from the date of the passage of this ordinance said company shall file in the office of the city clerk its written acceptance, under seal, of the terms hereof; and that upon the filing of such acceptance this ordinance and such acceptance shall constitute a contract binding upon the city of Pensacola and the Pensacola Gas Company.

Section 4. That the said Pensacola Gas Company may charge a net price for gas to consumers (except for public gas and street lamps) of not exceeding at the rate or equivalent of eight-tenths of one cent per hour for a 14-candle power light for all gas for which payment is made on or before the 20th of the month following the month in which the gas was consumed. All gas paid for after such 20th of month may be charged for at not to exceed the rate or equivalent of nine-tenths of one cent per hour for a 14-candle power light, during a period of ten years from January 1st, 1891, and shall not during said period charge at a higher rate for gas.

Section 5. Nothing in this ordinance contained shall impair, modify or change any rights or privileges.

328 SUPREME COURT.

Pensacola Gas Co. v. Pro. Munic. of Pensacola.—Statement of Case.

heretofore acquired by or granted to said Pensacola Gas Company, except as hereinbefore specifically set out.

Within the time allowed, the gas company filed a written acceptance of the terms of the ordinance.

1. The bill alleges (Section one) that the gas company on the 15th day of August, 1885, entered into a contract with the provisional municipality by which the former agreed to furnish the latter a number of public street gas lamps, not to exceed 137, and to light, extinguish, clean and keep them in good repair, without charge to the city, and to furnish gas at a price fixed in the agreement, a copy of which is filed with the bill, and being the agreement of August, 1885, above set forth.

2. That said contract expired June 19th, 1886, but the gas company continued thereafter to furnish gas to the city at the rate fixed in the contract, and for such performance erected upon the demand of the city at points indicated by it from time to time a number of public street gas lamps in excess of the 137 fixed in the contract, and maintained, lighted, extinguished, cleaned and repaired all without charge to or demand of payment from the city.

3. That on the      day of May, 1891, the gas company entered into another contract to furnish gas to the city for a period of ten years, and providing therein for lamps not to number less than 160, and for a service by the company in all respects other than as therein provided, as set out in the contract of August, 1885. The contract of May, 1891, is set out *supra*.

4. That under the contract of May, 1891, the gas company has from time to time, upon demand of the city, erected at points indicated by it, and without

charge or demand of payment, a number of public street gas lamps in excess of 160, and has maintained, lighted, extinguished, cleaned and repaired the same.

5. That now, although the city has directed the gas company to erect and furnish gas through certain public street lamps for the use of the public in the city, and although the locations upon which such erections have been ordered are upon streets and places where the needs of the population of the city require that public street lamps should be located, the gas company has refused and still refuses to erect public street lamps in said city unless it pays the cost of erecting such lamps and the cost of pipes and other expenses incident to the connection of such lamps with the mains of the company.

6. And that the city has refused to pay said sums, and the gas company still persists in its refusal, and said localities are without public street lights, and, under the terms of the contract with the defendant, must remain so for a long period of time.

The special prayer of the bill is that the gas company be decreed to perform its said contract made in May, 1891, by erecting public street gas lamps at such public places in said city as it may determine to require, without cost or expense in the erection of said lamps, or in connecting them with the mains of the company, and by furnishing gas in accordance with its contract, and that the said company, its officers, agents and servants be enjoined from refusing to erect and maintain said lamps, and to furnish gas through them.

A demurrer to this bill, on the ground that it was insufficient in law, in that it does not show that the gas company has failed to comply with the contract at-

tached as exhibit "A," was overruled, and afterwards the city amended its bill by adding another section, numbered seven, and alleging that the gas company was exercising its franchises and privileges within the limits of the city by virtue of an ordinance passed by the city of Pensacola on November 13th, 1882, a copy of which is attached as an exhibit. This ordinance is the same as that set out in the first part of this statement.

The gas company answered, and alleged that the facts set forth in the bill do not entitle the city to relief in equity, and advantage of this allegation is claimed as if demurrer had been interposed. The allegations in the first and third sections of the bill are admitted, and those in the seventh are not denied. As to the allegations in the second section of the bill, it is admitted that upon the expiration of the contract (of August 15th, 1885,) the gas company continued to furnish gas for the street lamps, and continued to clean, repair, light and extinguish the same at the price and upon the terms and conditions as to service as set forth in said contract, up to May 7th, 1891; but the allegation in this section that the gas company erected without charge to the city a number of public street lamps in excess of 137, is denied. It is alleged that the gas company charged the city for the erection of each and every public street gas lamp in excess of 137, and that the city acquiesced therein, and in such acquiescence the city acted in accordance with the gas company's understanding of the contractural relations existing between the parties as set forth in the bill and exhibits. It is denied that the gas company erected without charge to, or demand of payment from the city a number of public street lamps in excess of 160, as alleged in the fourth section of the bill. It is ad-

JANUARY TERM, 1894.    331

Pensacola Gas Co. v. Pro. Munic. of Pensacola. —Statement of Case.

mitted that the gas company did furnish gas, lights, extinguish and clean, under the terms of the contract made in May, 1891, but it is averred that the gas company charged the city for the erection of each and every public street lamp in excess of 137, and the city acquiesced therein. In answer to the fifth section it is alleged that the gas company is ready, able and willing to erect any number of public street gas lamps at such points as may be designated by the city, provided it will pay for the erection of the same, or if the city will pay the gas company for gas furnished to the lamps such reasonable sum as will enable the company to erect such lamps at its own expense. It is also alleged that the gas company, from time to time before the filing of the bill, had rendered to the city accounts for gas furnished and for public street lamps erected in excess of 137; that the accounts were itemized, showing that the gas company charged for the erection of lamps in excess of 137, and the city never complained of, or objected to the accounts; also that the city has from time to time made payments to the gas company in settlement of the indebtedness evidenced by said accounts, and said payments were applied by the gas company to the settlement of said accounts. Further, that the points indicated by the city for the erection of street gas lamps are so situated as to require an extension of the company's mains into localities where it would not have other customers for its gas, and that it would be a continuing loss and hardship upon it if forced to erect public street lamps as prayed for in the bill. That it was not contemplated when the gas company contracted with the city that public street gas lamps should be erected at points where there were no other customers of gas. It is further alleged that the gas company had fully com-

plied with the terms and conditions of the contract of
May 7th, 1891, but that the city was, at the time of
filing the bill, and still is, indebted to the gas company
for gas furnished, and that said indebtedness is due
and unpaid. It is denied that the localities referred
to in the sixth section of the bill must remain for a
long period without public street lamps under the con-
tract as alleged. It is averred that the city has a full
and adequate remedy at law. The defendant gas com-
pany further alleges that in accepting the ordinance of
May, 1891, as a binding contract on both parties, the
gas company did not intend to contract for the erection
of public street lamps in excess of 137 free of charge
to the city, and that the gas company understood said
contract was entered into to regulate the price and
quality of gas to be furnished the city and the citizens
thereof, and for the lighting and service of said street
lamps. That the gas company has so construed said
contract, and charged the city for the erection of each
and every public street lamp in excess of 137, and so
far as the company knows, the city has acquiesced
in such construction up to the time of filing the bill.

A general replication was filed, testimony taken,
and a final decree rendered, requiring the gas com-
pany to specifically perform its contract of May 7th,
1891, by furnishing and erecting public street gas
lamps at such public places in the municipality of
Pensacola as it may have designated and required up
to the filing of the bill, and without cost or expense to
the city in the erection of said lamps or the connec-
tion of them with the gas mains of the gas company,
and also by furnishing gas to said lamps in accordance
with said contract. The gas company, its officers,
agents and servants, were also enjoined from refusing
to erect, at the expense of the company, said lamps,

and to furnish them with gas. The gas company has appealed.

The other facts in the case are stated in the opinion of the court.

*Hunt Chipley* for Appellant.

*J. Emmet Wolfe* for Appellees.

MABRY, J.:

The errors assigned on this appeal are the over-ruling the demurrer to the bill of complaint, and the rendition of the final decree against appellant.

After the demurrer to the bill as originally filed was overruled, complainant amended by adding a paragraph to the bill, alleging that the defendant gas company was exercising its franchises and privileges in the city of Pensacola by virtue of the municipal ordinance passed November 13th, 1882, and issue was joined and the case disposed of in the Circuit Court, on the amended bill. The case will be considered here as presented by the amended bill and the issues raised thereon. In the answer to the amended bill the defendant gas company reserved the benefit of a demurrer thereto, on the ground that the facts alleged did not entitle complainant to any relief in equity.

It is insisted by counsel for appellant that the contract sought to be specifically performed imposes no obligation upon the gas company to furnish gas lamps in excess of 137 at its own expense. The bill alleges that the gas company has refused, and still refuses, to erect public street lamps in said city at points required, unless it pays the gas company the cost of erecting such lamps and the cost of pipes and other expenses inci-

dent to the connection of such lamps with the mains of the company. In answer to this allegation the gas company alleges that it is ready, able and willing to erect any number of public street lamps at such points as may be designated by the city, provided it will pay for erecting the same, or will pay the gas company for gas furnished to the lamps such reasonable sum as will enable the company to erect such lamps at its own expense. It is also alleged that the points indicated by the city for the erection of street lamps are so situated as to require an extension of the company's mains into localities where it would not have other customers for gas, and that it would be a continuing loss and hardship if forced to erect street lamps as prayed' for in the bill; and further, that it was not contemplated when the gas company contracted with the city that street gas lamps should be erected at points where there were no other customers of gas, and that the company did not intend to contract for the erection, at its cost, of more than 137 street lamps.

It becomes necessary, in the first place, for us to ascertain what is the contract, as well as its meaning, alleged to exist between the parties in reference to the subject-matter of this suit. The contract, according to the allegations of the amended bill, is contained in the ordinance passed by the city of Pensacola on the 13th of November, 1882, the contract between' the provisional municipality and the gas company, made in August, 1885, and the ordinance passed by the provisional municipality in May, 1891. The existence of the ordinances and contract, copies of which were filed with the bill, are admitted, but there is a wide difference between the municipality and the gas company as to their proper construction. The original ordinance passed in 1882 by its terms granted to Walsh

and his associates, now the gas company, the exclusive
privilege, for the period of thirty years from its pas-
sage, of erecting gas works in the city, and of us-
ing the streets, alley-ways and public grounds for
putting down pipe to convey gas for the use of the
city and its inhabitants. The gas works were to be
commenced within four months from the date of the
ordinance, and completed within eight months from the
date of commencement, together with the laying down
of such pipe as should be necessary for use in the bus-
iness and inhabited parts of the city. This require-
ment as to laying down pipe had reference probably to
the business and inhabited parts of the city at the time
when the gas works were to be completed, which was
eight months from the time construction was com-
menced, unless further time was extended, of which
we have no information. The third section of this
ordinance required Walsh and his associates, as a con-
sideration for the privilege granted, to furnish the cit-
izens of the city with gas of good quality at a rate not
to exceed three dollars per thousand cubic feet, and
the city for public uses as required at the rate not to
exceed two dollars and seventy-five cents per thousand
cubic feet. Construing this requirement, in connec-
tion with the exclusive privilege granted to erect gas
works in the city and to use the streets for laying down
pipe to convey gas for the use of the city and its in-
habitants, its effect was to impose a continuing obliga-
tion upon the gas company to furnish gas, for the
prices mentioned, as the demands of the city for public
use and the needs of its inhabitants should require.
The gas was to be furnished by means of pipes, the
customary way of supplying gas, to be laid by the gas
company, as is clearly indicated by the exclusive priv-
ilege given the company to lay down pipe in the

streets, alley-ways and public grounds to be used in conveying gas for the use of the city and its inhabitants. A strict construction of the terms of this ordinance as it stands, as against the gas company, and a liberal construction in favor of the granting power, should obtain. The right to supply a city and its inhabitants with gas by the use of pipes laid in the public streets is a franchise belonging to the state, and the service performed, as a consideration for the grant of such franchise, is of a public nature. New Orleans Gas Co. vs. Louisiana Light Co., 115 U. S., 650; Louisville Gas Co. vs. Citizens Gas Co., *Ibid*, 683. If the power to grant such a franchise be conferred upon a municipal corporation, it belongs to those powers held by it in trust for the public, and the rule is that such grants from a municipality must be strictly construed as against the grantee, and this must guide us in construing the entire contract before us. State *ex rel.* vs. Jacksonville Street Ry. Co., 29 Fla., 590, 10 South. Rep., 590; Birmingham & Pratt Mines St. Ry. Co. vs. Birmingham St. Ry. Co., 79 Ala., 465. The original ordinance of 1882, as it was passed, imposed the obligation upon the gas company of furnishing gas of good quality, at the prices therein mentioned, as the demands of the city for public use required, and in order to accomplish this it was made the duty of the gas company to put down, at its expense, the necessary pipe to convey the gas. By the contract made in August, 1885, the gas company agreed, for the considerations therein mentioned, to furnish the city with a number of street lamps not to exceed 137, and to light, extinguish, clean and keep them in good repair without charge to the city. The lights or burners for the lamps, as well as a schedule of time for lighting and extinguishing them, are provided for in

# JANUARY TERM, 1894. 337

Pensacola Gas Co. v. Pro. Munic. of Pensacola.—Opinion of Court.

this contract, and the price of the gas to the city is changed from so much per thousand cubic feet as in the ordinance of 1882, to $1.66⅔ for each light per month, payable at the end of each month. After providing that the gas company should furnish street lamps not to exceed 137, with specified burners, and that it should supply them with gas, light and extinguish them according to a schedule prescribed, the language of the contract is, "for which light so furnished the city is to pay said gas company for each and every light the sum of $1.66⅔ per month," payable at the end of each month. By the terms of this contract it was to take effect and be in force from the 19th day of June, 1885, to the 19th day of June, 1886. It is shown by the record that the gas company furnished the 137 lamps with the required burners, and it is conceded by its counsel that it was its duty to furnish the said lamps, supply them with gas, clean and repair them without cost to the city otherwise than the pay of $1.66⅔ for each light per month. It is also shown that after the expiration of the time fixed in the contract the gas company continued to furnish gas to the city under the terms of the contract up to the first of January, 1891, and during this time erected, on the demand of the city, a number of street lamps in excess of 137 and supplied them with gas as provided in the contract. The bill alleges that this was done without charge or demand of payment from the city, but the answer, while it admits that lamps in excess of 137 were erected during that time, denies that they were erected without charge to the city. It is alleged that the city was charged with every lamp in excess of 137, and that itemized accounts were rendered from time to time to the city for the erection of

22

SUPREME COURT.

such lamps. It appears from the proof that in the general accounts rendered by the gas company to the city for gas furnished during that period there are items for "st. lamp erection." One of these items was in the account for 1888, and three in the account for 1890. The city made payments at different times to the gas company on the accounts, but not paying in full, and it appears that there is a disagreement between them as to paying for erecting street lamps. In 1892 the gas company refused to erect any more lamps upon the refusal of the city to pay for them, and the city instituted this suit. Such was the business relation existing between the city and the gas company when the ordinance of May, 1891, was passed. The title of this ordinance is: "To effect a settlement of the claims of the Pensacola Gas Company against the city of Pensacola, to establish the price of gas, and to provide for public gas lamps for the period of ten years from January 1st, 1891, and to extend the term of the rights and privileges granted to the Pensacola Gas Company." As disclosed by its title, several objects were to be accomplished by this ordinance. The gas company had obtained judgments against the city amounting, with interest to January 1st, 1891, to $6,200.50, and a settlement was desired. The plan, it seems, for paying the judgments, agreed on by the city and the gas company, was for the latter to reduce the price of gas as then paid for public use, so far as the city was concerned, and to increase it to private consumers for a period of ten years from January 1st, 1891, and to extend the term of the rights and privileges granted to the gas company for fifty years from January 1st, 1891. The gas company is given the right to charge private consumers of gas for a period of ten years from the first day of January,

JANUARY TERM, 1894. 339

Pensacola Gas Co. v. Pro. Munic. of Pensacola.—Opinion of Court.

1891, a net price not exceeding the rate or equivalent of eight-tenths of one cent per hour for a fourteen-candle power light, if payment be made on or before the 20th day of the month following the one in which the gas was furnished, but if not paid for within that time, the rate or equivalent of not exceeding nine-tenths of one cent per hour for the candle power mentioned might be charged. The price of gas to be furnished the city was not to exceed $18 per annum for each street gas lamp of the same efficiency as the service performed at the passage of the ordinance, including the furnishing of gas, lighting, extinguishing, cleaning and repairing. Other provisions are made relating to furnishing gas to the city, to which reference will be made in another connection. The gas company was to have and enjoy from and after November 13th, 1912, until January 1st, 1941, all the rights and privileges theretofore granted to it by the city, except that after November 13th, 1912, its rights and privileges shall not be exclusive, but subject to the terms and provisions of regulating ordinances to which the company was then subject. It is also provided that nothing contained in the ordinance shall impair, modify or change any rights or privileges theretofore granted to, or acquired by the gas company except as therein specially set out. Considering both ordinances, as well as the contract of 1885 as they exist, it is entirely clear that the gas company is under obligation to supply the city with gas for public purposes as the public necessities require, and in order to accomplish this it is the duty of the company to put down the necessary pipes at its own expense. This duty was imposed upon the company by the original ordinance, as we have seen, and there is nothing in the contract of 1885, or the subsequent ordinance of

340 SUPREME COURT.

Pensacola Gas Co. v. Pro. Munic. of Pensacola.—Opinion of Court.

1891 to relieve it of this duty. The exclusive privilege given by the terms of the original ordinance of making gas in the city and of using the streets for putting down pipe to convey gas for the use of the city and its inhabitants, is preserved until November 13th, 1912, with a change in reference to the price to be paid for the gas. The requirement under the original ordinance was that the city should be furnished with gas of good quality for public uses as required, and if the public needs require that gas shall be furnished in any parts of the city it is the duty of the gas company to lay down the pipe to convey it where it is needed. We entertain no doubt about the duty of the gas company in this respect, and its refusal to furnish at its expense the necessary pipes to convey gas to any part of the city where the public necessities require it, upon a compliance with the contract on the part of the city, is without excuse. Whether or not the gas company is under obligation to furnish, at its expense, the necessary street lamps and burners under the contract as it exists, is a question of more difficulty. There is no doubt about the duty of the gas company to furnish the 137 street lamps and burners provided for in the contract of 1885, but these have been furnished, and the question arises under the ordinance of 1891 as to its duty to furnish others as the public needs require. Our conclusion is, that by the terms of the contract as it now exists, it is the duty of the gas company to erect street lamps as the public necessities for lighting the streets demand. The ordinance shows on its face that the municipality was providing a service for lighting the streets of the city by means of street gas lamps for a period of ten years, and that an exclusive privilege was being given to the gas company for that purpose. "To establish the price of gas, and to pro-

vide for public gas lamps for the period of ten years from January 1st, 1891," are subject-matters of the ordinance expressed in the title, and for nearly five years prior to the passage of this ordinance the gas company had been supplying the city with gas under a contract requiring the company to furnish, at its expense, street lamps with specified burners to the number of 137. This contract is referred to and made the basis of obligation between the parties as to the service being provided for, except as otherwise provided in the ordinance. For the light furnished under the contract of 1885, which included the 137 street lamps, their lighting, extinguishing, cleaning and repairing, the city paid so much per month for each light, instead of so much per thousand cubic feet, as provided in the ordinance of 1882. The price for gas to the city is still to be so much for each light, but fixed at so much per annum, instead of per month as formerly. In the portion of the second section of the ordinance regulating the duties of the gas company, it is provided that it shall not charge the city a higher price than $18 per annum for each public street lamp of the same efficiency as the present service, including furnishing gas, lighting, extinguishing, cleaning and repairing. The terms, "lamps of the same efficiency as the present service," does not mean the same number of lamps then in use, but lamps of the same light-giving capacity. The lamps are to be lighted and the service for the ten-year period is to be rendered upon the same terms and conditions in all other respects as set out in the contract of 1885, and the lamps are to be furnished with burners of the same sizes named in said contract. This ordinance, as clearly indicated by its title, was designed to supply the city with gas and provide street lamps for a period of ten years. Fol-

lowing the provisions above referred to and in the conclusion of the same section, we find the words, "said lamps to number not less than 160." The lamps here mentioned had reference to those to be employed in service for the city, and for which provision was being made in the ordinance. The burners for the lamps are specially provided for and it is clear that the gas company must furnish them. The obligation to furnish street lamps, clean and repair them, imposed by the contract of 1885 was, we think, continued with the limitation in it as to the number to be furnished removed. As it now stands the gas company can insist on not less than 160 for which payment may be made, and this is of course in excess of the 137. The contract must be liberally construed in favor of the granting power, and considering the nature of the service to be rendered and the time it is to continue, in connection with the terms used, we think the duty of furnishing street lamps as the public necessities require and on the terms of payment prescribed, rests upon the gas company. In reaching this conclusion we have not overlooked the fact that the gas company reduced the price of gas as then paid by the city as to the quantity to be furnished it in the future, and cancelled a judgment of $6,200.50. The price of gas to be paid by the city, however, for the ten years from January 1st, 1891, was much more than that fixed in the original ordinance, and the price fixed for private consumers was considerably increased. Besides, the gas company obtained an extension of its rights and privileges. The considerations *pro* and *con*, as expressed in the ordinance, are not such as to affect the meaning of the terms of the contract as we have above construed it.

Having ascertained the meaning of the terms of the contract as agreed upon between the parties, the next inquiry is the right of the city to maintain a bill in equity to enforce a specific performance of the duties thereby imposed upon the gas company. It is insisted on behalf of the gas company that should the contract be construed to impose upon it the duty of laying down the pipe, and of erecting street gas lamps on the demand of the city as public necessity requires, still the city is not entitled to invoke the aid of a court of equity in enforcing the performance of this contract. Several grounds for resisting the suit under this head are urged, the most prominent being that the city was indebted to the gas company at the time of filing its bill under the terms of the contract sought to be enforced; that the contract is one for personal services requiring a succession of acts on the part of the gas company; that the contract is not certain in its provisions, and the bill is too general in its nature; that the contract is lacking mutuality, is unreasonable and oppressive, and is founded on a mistake of fact. It will not be necessary for us to consider any of these objections, except the one first mentioned.

We said in McCrillis vs. Copp, 31 Fla., 100, 12 South. Rep., 643, that the "enforcement of the specific execution of a contract in a court of equity is not a matter of strict legal right, but rests in the sound discretion of the court. This does not mean an arbitrary discretion, but a sound legal discretion, and it may be stated generally, that a court of equity will decree the specific performance of a written contract where it is certain, fair in all of its parts, not in contravention of law or public policy, and is capable of being performed." *Vide* Knox vs. Spratt, 23 Fla., 64, 6 South.

Rep., 924, and Dewhurst vs. Wright, 29 Fla., 223, 10 South. Rep., 682. In reference to the default on the part of the complainant the rule is stated by Fry on Specific Performance, sec. 608, as follows, *viz*: "With regard to the matters to be done by the plaintiff according to the terms of the contract, it is from obvious principles of justice incumbent upon him, when he seeks the performance of the contract, to show, first that he has performed, or been ready and willing to perform, all essential terms of the contract on his part to be then performed; and, secondly, that he is ready and willing to do all matters and things on his part thereafter to be done; and a default on his part in either of these respects furnishes a ground upon which the suit may be resisted." Pomeroy on Specific Performance says (sec. 323): "It is the fundamental doctrine upon which the specific enforcement of contracts in equity depends, that either of the parties seeking to obtain the equitable remedy against the other must, as a condition precedent to the exercise of his remedial right, show that he has done or offered to do, or is then ready and willing to do, all the essential and material acts required of him by the agreement at the time of commencing the suit, and also that he is ready and willing to do all such acts as shall be required of him in the specific execution of the contract according to its terms." This author says that there are two apparent exceptions to this rule: first, a strict performance at the very time stipulated is not generally essential, and, second, immaterial defects of the subject-matter or failure of title, when admitting of compensation, may not prevent a plaintiff from enforcing the remaining part of the agreement. But even in these instances, there is no real departure from the rule, for where a delay is permitted, it does

not render performance some time, at or before the suit, any the less necessary, and the defects or failures in the subject-matter or title of the complainant must be so partial and immaterial that the substance of the contract and its essential terms can be carried into effect by the complainant. The general principle remains true as stated by Pomeroy, "that the party who, as actor, calls upon a court of equity for its specific relief, must show that he has complied, or has offered to comply, or is then ready and willing to comply with the provisions of the agreement in respect to what ought to have been done by him, and that he is ready and willing to comply with the provisions in respect to what he will be required to do in the future." The authorities are numerous and uniform in enforcing the rule that it is incumbent on a party who asks a court of chancery to compel the specific performance of a contract to show that he has performed, or been ready and willing to perform, all the essential terms of the contract on his part. Thorp vs. Pettit, 16 N. J. Eq., 488, Tyler vs. McCardle, 9 Smedes & M., 230; 22 Am. & Eng. Ency. of Law, note 1, p. 927. This is upon the principle that he who seeks equity must do equity, and it requires of the complainant "that he do all that is in his power to fulfil his part of the contract which he is seeking to enforce, according to its terms. He must do his full duty or the court will not regard his prayer."

Issue was taken upon the allegation of the answer that the gas company had fully complied with the terms and conditions of the contract of May, 1891, but that the city was, at the time of filing the bill, and still is, indebted to the gas company for gas furnished, and that said indebtedness was due and unpaid. The proof shows that when the bill was filed in September

1892, and when the testimony was taken in December, 1893, the city was in arrear to the gas company a considerable sum for gas furnished since the passage of the ordinance of 1891. The account rendered by the company against the city for gas furnished and lamp erections, from January 1st, 1891, to October, 1893, shows a balance of indebtedness of over five thousand dollars. The items in this account for lamp erections, amounting to between nine hundred and one thousand dollars, are disputed by the city, but if such items be entirely eliminated, it still leaves the city behind with the gas company a considerable sum of money for gas furnished under the contract since the passage of the ordinance of 1891. It is not denied by its counsel that the city was indebted to the gas company a considerable sum for gas furnished under the contract when the bill was filed, and when the decree was rendered, but it is contended that the "sole question before the court below was the proper construction of the contract, the disputed point being as to which party was liable to pay for the newly erected lamps." The further defense, however, of the city's indebtedness for gas furnished under the contract is set up in the answer and made an issue in the suit. The refusal of the gas company to erect the street lamps free of cost to the city, on the ground that the contract imposed no such liability upon the company, did not deprive it of the right of showing in the suit for specific performance that the city had not complied with the contract on its part. The gas company did not waive this defense, as it is expressly set up in its answer and made an issue in the case. It was incumbent upon the city to show a compliance, or an offer of compliance with the contract on its part, before it could call upon the gas company to execute its part of the agreement. The rule,

as above stated, required the city to show that it had performed, or had been ready and willing to perform, all the essential terms of the contract to be performed on its part at the filing of the bill, and no such compliance is even alleged by the city. The ordinance of 1891 expressly provides that payments for street lamp service shall be made monthly by the city to the gas company, and this is certainly a material and essential part of the agreement. The same contract that imposes the obligation upon the gas company to erect street lamps requires the city to pay monthly for gas furnished. Can the city then successfully invoke the aid of a court of chancery to compel the gas company to erect additional street lamps and supply them with gas, when the city, as appears here, is in default largely in paying for gas already furnished under the contract? We think not. Its failure to comply with the terms of the contract in paying for gas already furnished, so long as it exists, is, in our judgment, a bar to its right in equity to compel the gas company to erect more gas lamps. It can not be said that the city has performed, or been ready and willing to perform, all the essential and material parts of the agreement to be performed on its part when the bill was filed. Bowman vs. Irons, 2 Bibb, 78, 4 Am. Dec., 686; Board of Supervisors of Livingston Co. vs. Henneberry, 41 Ill., 179; Chicago Municipal Gas Light & Fuel Co. vs. Town of Lake, 130 Ill., 42; Askew vs. Carr, 81 Ga., 685; Ohio Steel Barb Fence Co. vs. Washburn & Moen Manufacturing Co., 26 Fed. Rep., 702; Tiedeman's Equity Jurisprudence, sec. 498; 3 Pomeroy's Equity Jurisprudence, sec. 1407. The fact that the gas company has the right to sue the city and coerce the payment for gas furnished does not relieve the city from the necessity of showing in a court of equity a com-

pliance with the contract on her part, nor will the refusal to decree a specific performance solely on account of the failure of the city to comply with the contract as to paying for gas, have the effect, as claimed by counsel, to change or alter the terms of the contract itself.

The reformation of the contract is not involved in this suit. The city is in a court of chancery, and before it can ask equity it must do equity. It can not withhold from the gas company a large sum of money due it under the contract for supplying lamps and gaslight service, and at the same time ask the company to comply with the contract on its part in erecting more lamps. To permit this would be to enforce the contract for the city's benefit when it was not complying with the contract in an essential particular. For this reason the decree was erroneous.

In disposing of the case on the grounds considered we do not decide any others raised, or that may be involved in the record.

The decree is reversed, and it will be so ordered.